IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LEE O. HENRY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL NO. H-06-0990 |
| | § | |
| JO ANNE B. BARNHART, | § | |
| COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION**

Pending before the court[1] are Plaintiff's motion for summary judgment (Docket Entry No. 24) and Defendant's cross motion for summary judgment (Docket Entry No. 18). The court has considered the motions, all relevant filings, the administrative record, and the applicable law. For the reasons set forth below, Plaintiff's motion for summary judgment is **DENIED** and Defendant's cross motion for summary judgment is **GRANTED**.

## I. Case Background

### A. Procedural History

In this action, Lee O. Henry ("Plaintiff") seeks review of the decision of the Commissioner of the Social Security Administration ("Commissioner" of "Defendant") denying his application for a period of disability and disability insurance

---

[1] The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgement, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Docket Entry No. 11.

payments under Title II of the Social Security Act ("the Act").

Plaintiff filed his application on October 29, 2003.[2]  After the application was denied at the initial and reconsideration levels, he requested a hearing before an Administrative Law Judge of the Social Security Administration ("ALJ").[3]  The ALJ granted Plaintiff's request and conducted a hearing in Houston, Texas, on September 20, 2005.[4]  After listening to testimony presented at the hearing and reviewing the medical record, the ALJ issued an unfavorable decision on October 5, 2005.[5]  The ALJ found Plaintiff was not disabled at any time during the period covered by his application, and Plaintiff appealed that decision on October 7, 2005.[6]

On March 13, 2006, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner.[7] Plaintiff filed this timely civil action pursuant to 42 U.S.C. § 405(g) for judicial review of the Commissioner's unfavorable decision.

## B. Factual History

---

[2]    Transcript of the Administrative Proceedings ("Tr.") 104-106.

[3]    Tr. 53, 55, 61.

[4]    Tr. 444.

[5]    Tr. 14-24.

[6]    Tr. 12-13.

[7]    Tr. 5-7.

<u>1. Plaintiff's Age, Education, and Work Experience</u>

Plaintiff was born on June 4, 1952, and was fifty-three years old at the date of the ALJ's decision.[8] He allegedly became unable to work on February 10, 2003.[9] In addition to completing the tenth grade, Plaintiff obtained additional training in computer operation, sales, and truck driving.[10] Prior to the onset of his alleged disability, Plaintiff was employed for approximately twenty years by the Coca-Cola Company as an account manager, truck driver, and merchandiser.[11]

<u>2. Plaintiff's Testimony</u>

During the ALJ hearing, the judge solicited testimony from Plaintiff, a medical expert ("ME"), and a vocational expert ("VE"). Plaintiff testified to suffering from a thoracoabdominal aortic aneurism, distal right coronary artery disease, pain in his legs and back, shortness of breath, gout, episodes of dangerously high blood pressure, and acid reflux.[12] He explained that during his last year working at Coca-Cola his ailments caused him to miss several days of work each month.[13] He also became too tired to complete his delivery route during the normal

---

[8]      Tr. 18, 104.

[9]      Tr. 104.

[10]     Tr. 117.

[11]     Tr. 146, 448-449.

[12]     <u>See</u>, <u>e.g.</u>, tr. 111, 453, 455, 456.

[13]     Tr. 450, 452.

3

five-day work week and compensated by working over a seven-day period and personally hiring and paying for other people to help with his assigned tasks.[14]

In response to his attorney's questions, Plaintiff confirmed that he underwent surgery for an aneurism, but also stated that no treatment resolved the severe blockage of one of his arteries.[15] Although he no longer felt chest pain following his surgery, he continued to become short of breath when exerting himself.[16] He testified to having problems walking and to experiencing numbness in his feet and the upper portion of his right leg, as well as a tingling pain in his arms.[17] He also complained of back pain and "bad acid reflux" problems.[18] He discussed feeling "a whole lot of pain" from gout in his left large toe and had recently visited the emergency room for an episode of high blood pressure.[19]

At the time of the hearing, Plaintiff stated that he drove once or twice a week, went to church once a week, went fishing once every two or three months, and could put dishes in the dishwasher, do laundry, take out the trash, and do some grocery

---

[14]   Tr. 450-451.

[15]   Tr. 452-453.

[16]   Tr. 453-454.

[17]   Tr. 454.

[18]   Tr. 454, 455.

[19]   Tr. 456, 458-459.

4

shopping.[20]   He reported taking seven medications and testified that they made him drowsy and affected his vision and concentration.[21]

At the conclusion of the hearing, Plaintiff's attorney urged the ALJ to consider Plaintiff as capable of working at only the sedentary level and to apply Rule 201.10 of the medical-vocational guidelines (the "Grid")[22] when making his decision.[23]

3. Medical Records

Although Plaintiff's medical records appear generally to support his testimony, some discrepancies exist related to the severity of his complaints.

In March of 2002, Plaintiff underwent surgery to repair an aortic coarctation[24] and thoracic aneurism.[25]   Approximately two months later, he also had surgery on his left vocal cord.[26]   Both surgeries appear to have gone well.[27]   His records also document a history of hypertension, but indicate that his blood pressure

---

[20]     Tr. 456, 457-458, 462,

[21]     Tr. 455, 460-461.

[22]     20 C.F.R. Pt. 404, Subpt. P, App. 2.

[23]     Tr. 484.

[24]     An aortic coarctation is a "localized narrowing of the aorta, caused by an abnormality in the structure of the middle coat of the aorta."   2-CH Attorneys' Dictionary of Medicine 3322 (LEXIS).

[25]     Tr. 207.

[26]     Tr. 243.

[27]     See, e.g., tr. 262.

5

was under control at many of his doctor visits.[28]

On at least two occasions in 2004, Plaintiff indicated to his doctors that he was able to exercise, and he received generally positive reports from his physical therapy visits throughout 2005.[29]   His cardiac ejection fraction remained consistently at fifty-five percent or above.[30]   The records confirm that he complained of back pain and that he was diagnosed in December 2004 with "[m]ultilevel degenerative disk desiccation and posterior facet arthrophathy."[31]   The same report stated that "there [was] no evidence of central canal stenosis or exiting nerve root compression at any level," and his physician remarked in April 2005 that, despite his back problems, Plaintiff was capable of performing "medium work activity" which consisted of "[e]xerting 20-50 pounds of force occasionally, and/or 10-25 pounds of force frequently, and/or greater than negligible up to 10 pounds of force constantly."[32]

Plaintiff's records establish that he was approximately five feet, seven inches tall and typically weighed between 214 and 220 pounds.[33]   On two "Discharge Summaries" written in March 2002,

---

[28]      See, e.g., tr. 262, 296, 409.

[29]      Tr. 305, 351, 393-396.

[30]      Tr. 292, 294, 309, 311, 313, 315, 317, 319, 413.

[31]      Tr. 298-299, 363, 367, 368, 389, 427.

[32]      Tr. 367, 389-390.

[33]      See, e.g., tr. 263, 274, 306, 220, 355, 356, 358-361, 363, 368-369, 374, 389, 391, 393-397, 399, 404, 406.

Plaintiff's surgeon remarked that "[m]oderate obesity is noted," and Plaintiff was described as being "well nourished" by a doctor in December 2004.[34]

### 4. Medical Expert's Testimony

Based on his review of the medical evidence, Stanton Fischer, M.D., ("Dr. Fischer") testified at the hearing that the record revealed that Plaintiff suffered from degenerative disc disease of his thoracic spine, esophagitis, an aortic aneurism, high blood pressure, an enlarged aortic root, and gout.[35]   Dr. Fischer also noted that Plaintiff's weight had been discussed at the hearing, but testified that none of the impairments he identified met or equaled a listed impairment in the Listings.[36]

Dr. Fischer also stated that although he initially was "looking more at something like sedentary or a little bit less than sedentary" regarding Plaintiff's residual functional capacity ("RFC"), after reviewing the entire medical record, he determined that Plaintiff could lift up to twenty pounds occasionally and ten pounds frequently.[37] He opined that Plaintiff could sit without a problem, but would be very limited in his ability to walk or stand.[38]  "Pushing, pulling, fingering,

---

[34]      Tr. 208, 211, 306.
[35]      Tr. 466-468.

[36]      Tr. 466-468. "The Listings" refers to impairments listed in Appendix 1 of the Social Security Act regulations. 20 C.F.R. Pt. 404, Subpt. P, App.1.

[37]      Tr. 470.

[38]      Tr. 471-472.

[and] handling is all right so long as he's not pushing and pulling more than 10 pounds."[39]   Additionally, "climbing, heights, balancing, [and] ladders is sort of out for him," but "he could probably" climb a flight of stairs or "rarely" a ramp.[40]  The ME also determined that Plaintiff was not limited by other visual, hearing, or environmental factors.[41]

In response to Plaintiff's attorney's questions, Dr. Fischer discussed Plaintiff's hypertension and heart problems, explaining that:

> [t]he important thing in the record is that the amount of blood that the heart is pumping out, the way that it is working is pretty normal.  It's pumping out more than sixty percent or so the amount of blood that's returned to the heart.  Anything more than forty-five or fifty is normal so his heart is functioning all right.  In other words, it's adapting to the high blood pressure satisfactorily.[42]

The ME also noted that Plaintiff had a "seventy percent obstruction to one of the small arteries on the right side of the heart," but testified that the obstruction should have no affect on his RFC.[43]

Dr. Fischer interpreted Plaintiff's treating physician's evaluations to state that Plaintiff's leg pain "was orthopedic rather than vascular in nature," and noted that Plaintiff "has

---

[39]   Tr. 471.

[40]   Tr. 471.

[41]   Tr. 471.

[42]   Tr. 474.

[43]   Tr. 474-475.

significant trouble with his back."[44]   The ME concluded his testimony by acknowledging that Plaintiff's medications "absolutely" could cause drowsiness, but stated that he did not see an indication in the records that Plaintiff had complained of suffering from such a side effect.[45]

The administrative record also contains two Physical RFC Assessment forms completed by state medical consultants ("MCs"). When evaluating Plaintiff's limitations on these forms, the MCs were instructed to "[b]ase [their] conclusions on **all evidence** in [the] file," ensure that they had "given appropriate **weight to treating source conclusions,**" and had "[c]onsidered and responded to **any alleged limitations imposed by symptoms** (pain, fatigue, etc.) attributable, in [their] judgment, to a medically determinable impairment."[46]

Both doctors determined that Plaintiff was capable of occasionally lifting at least twenty pounds and frequently lifting at least ten pounds.[47]   Both stated that Plaintiff could stand and/or walk at least two hours in an eight-hour day, and could sit about six hours per day.[48]   They agreed that he was not impaired by postural, manipulative, or environmental limitations;

---

[44]     Tr. 470, 477–478.

[45]     Tr. 478–479.

[46]     See, e.g., tr. 266.

[47]     Tr. 267, 280.

[48]     Tr. 267, 280.

and also found that he was not restricted in his ability to push, pull, see, or communicate.[49]   Finally, each MC opined that Plaintiff's allegations related to his symptoms and limitations were not wholly credible.[50]

### 5. Vocational Expert's Testimony

After reviewing the file and listening to the testimony, the VE, Patricia Cowen ("Cowen"), opined that Plaintiff's prior relevant work was classified as a delivery driver and represented medium, semi-skilled work.[51]   Cowen also testified that Plaintiff's skills could not transfer to a lighter exertional occupation.[52]

The VE was asked by the ALJ if a hypothetical individual of Plaintiff's age and educational background, and with Plaintiff's work history, would be able to perform certain jobs assuming that the individual would also be restricted to: a) lifting and/or carrying no more than ten pounds frequently and twenty pounds occasionally; b) sitting approximately six hours and standing and/or walking for two or two-and-a-half hours out of an eight hour day; c) not pushing or pulling more than ten pounds, d) no climbing ropes, ladders, or scaffolds; e) no more than occasionally negotiating ramps or up to one flight of stairs at a

---

[49]     Tr. 267-270, 280-283.

[50]     Tr. 271, 284.

[51]     Tr. 481.

[52]     Tr. 482.

time; and f) only occasionally bending, stooping, balancing,
kneeling, crouching, or crawling.[53]   Furthermore, after standing
or walking for thirty minutes, the individual must be able to
rest for up to ten minutes.[54]

Presented with this hypothetical, the VE opined that such an
individual would not be able to perform Plaintiff's past work,
but would be able to perform a job in the "light unskilled job
base with a sit/stand option."[55]   According to Cowen, the
individual could work as a packager, sorter, or assembler.[56]
Each of those positions were available in significant numbers in
both the regional and national economies.[57]

In response to a followup question posed by Plaintiff's
attorney, the VE testified that an individual who required the
ability to "lay down two to three hours a day because of the
effects of [his] medication," would be unable to perform any jobs
in the national economy.[58]   Cowen also opined that an individual
who was required to miss three days of work per month would
similarly be unable to maintain employment.[59]

## II. Standard of Review and Applicable Law

---

[53]   Tr. 482.

[54]   Tr. 482.

[55]   Tr. 482-483.

[56]   Tr. 483.

[57]   See tr. 483.

[58]   Tr. 483.

[59]   Tr. 483.

The court's review of a final decision by the Commissioner to deny disability benefits is limited to two issues: 1) whether proper legal standards were used to evaluate the evidence; and 2) whether substantial record evidence supports the decision. <u>Waters v. Barnhart</u>, 276 F.3d 716, 718 (5th Cir. 2002); <u>Brown v. Apfel</u>, 192 F.3d 492, 496 (5th Cir. 1999).

The widely accepted definition of "substantial evidence" is "something more than a scintilla but less than a preponderance." <u>Carey v. Apfel</u>, 230 F.3d 131, 135 (5th Cir. 2000); <u>Brown</u>, 192 F.3d at 496.  In applying this standard, the court is to review the entire record, but the court may not reweigh the evidence, decide the issues de novo, or substitute the court's judgment for the Commissioner's judgment.  <u>Brown</u>, 192 F.3d at 496.   The Commissioner is given the responsibility of deciding any conflicts in the evidence.   <u>Id.</u>   "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."  42 U.S.C. § 405 (g).   Only if no credible evidentiary choices of medical findings exist to support the Commissioner's decision should the court overturn it.   <u>Johnson v. Bowen</u>, 864 F.2d 340, 343-44 (5th Cir. 1988).   In other words, the court is to defer to the decision of the Commissioner as much as is possible without making the court's review meaningless.   <u>Brown</u>, 192 F.3d at 496.

The legal standard for determining disability under the Act is whether the claimant is unable "to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).   To determine whether a claimant is capable of performing any "substantial gainful activity," the regulations provide that disability claims should be evaluated according to the following sequential five-step process:

> (1) a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless he has a "severe impairment;" (3) a claimant whose impairment meets or is equivalent to an impairment listed in [20 C.F.R. Pt. 404, Subpt. P, App. 1] will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that he has done in the past must be found "not disabled;" and (5) if the claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other work.

Bowling v. Shalala, 36 F.3d 431, 435 (5th Cir. 1994).

To be entitled to benefits, a claimant bears the burden of proving he is disabled within the meaning of the Act.   Wren v. Sullivan, 925 F.2d 123, 125 (5th Cir. 1991).   By judicial practice, this translates into the claimant bearing the burden of proof on the first four of the above steps and the Commissioner bearing it on the fifth.   Brown, 192 F.3d at 498; Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994).   The analysis stops at any point in the five-step process upon a finding that the claimant is or is not disabled.   Greenspan, 38 F.3d at 236.

In certain cases, an ALJ may use the the Grid to determine whether a claimant is capable of performing other work. <u>Watson v. Barnhart</u>, 288 F.3d 212, 216 (5th Cir. 2002). The Grid is applicable if the "claimant suffers only from exertional impairments, or . . . the claimant's nonexertional impairments do not significantly affect his residual functional capacity." <u>Id.</u> (quoting <u>Crowley v. Apfel</u>, 197 F.3d 194, 199 (5th Cir. 1999)). In cases where nonexertional factors can limit the range of jobs a claimant can perform, "the ALJ must rely on expert vocational testimony to establish that jobs exist." <u>Scott v. Shalala</u>, 30 F.3d 33, 35 (5th Cir. 1994).

### III. Analysis

In this case, the ALJ found that Plaintiff met the special earnings requirements of the Act and had not engaged in substantial gainful work since the alleged onset date of his disability.[60] The ALJ found that Plaintiff's "degenerative disc disease of the thoracic and lumbar spine; status post repair of an aortic aneurysm; hypertension; arteriosclerotic heart disease; large toe gout; and obesity are considered 'severe' based on the requirements in the" applicable regulations.[61] The ALJ determined, though, that none of these impairments met or equaled any of the relevant Listings.[62]

---

[60]   Tr. 23.

[61]   Tr. 23.

[62]   Tr. 23.

14

According to the ALJ, Plaintiff's testimony was "not totally credible," and he retained an RFC that allowed him to "lift and/or carry ten pounds frequently and twenty pounds occasionally . . . sit about six hours [and] . . . stand and/or walk two to two-and-a-half hours daily[, with the caveat that] after standing and/or walking, he would have the option to sit for ten minutes at his work station."[63]   Plaintiff was also restricted from "pushing or pulling greater than ten pounds" and from "climbing ropes, ladders or scaffolds."[64]   "He [could] occasionally climb ramps and stairs, but only one flight at a time . . . [and could] occasionally bend, stoop, crouch, balance, kneel and crawl."[65]

Utilizing this RFC, the ALJ was guided by Rule 202.11 from the Grid and employed the advice of a VE to determine that Plaintiff "was not under a 'disability,' as defined in the Social Security Act, at any time through the date of [the ALJ] decision."[66]

Plaintiff requests judicial review of this decision to deny disability benefits, contending that the ALJ's determination is not supported by substantial evidence and that the ALJ did not follow proper legal procedures.   Specifically, Plaintiff alleges that the ALJ's decision failed to consider all appropriate Listings, failed to take into account Plaintiff's obesity, failed

---

[63]   Tr. 23-24.
[64]   Tr. 24.

[65]   Tr. 24.

[66]   Tr. 24.

to include all of Plaintiff's limitations, and failed to properly assess Plaintiff's credibility.

Defendant, on the other hand, contends that the ALJ employed proper legal standards in reviewing the evidence and that the decision is supported by substantial evidence of record. Defendant therefore maintains that the ALJ's decision should stand.

The court reviews each party's arguments below.

**A. Listings**

Plaintiff first argues that the ALJ failed to analyze, or even reference, Listing 4.04C(1)(b), the Listing for coronary artery disease. <u>See</u> 20 C.F.R. Part 404 App. 1 § 4.04C (2005).

Listing 4.04C directs a presumptive finding of disabled at step three in the determination process if Plaintiff's impairment qualifies as:

> Coronary artery disease, demonstrated by angiography (obtained independent of Social Security disability evaluation), and an evaluating program physician, preferably one experienced in the care of patients with cardiovascular disease, has concluded that performance of exercise testing would present a significant risk to the individual, with both 1 and 2:
>
> 1. Angiographic evidence revealing:
>
>            * * *
>
> b. 70 percent or more narrowing of [a] nonbypassed coronary artery; [and]
>
>            * * *
>
> 2. Resulting in marked limitation of physical activity, as demonstrated by fatigue, palpitation, dyspnea, or

16

anginal discomfort on ordinary physical activity, even though the individual is comfortable at rest.

Id.[67]

"For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (U.S. 1990). The ALJ is responsible for making the determination as to whether a severe impairment meets or equals a Listing. Soc. Sec. Ruling ("SSR") 96-6P, 1996 SSR LEXIS 3, 7-8.

Here, the ALJ explicitly found that none of Plaintiff's impairments did meet or equal a Listing, and the court finds this determination to be supported by substantial evidence.[68]

At the onset, the court notes that after listening to Plaintiff's statements and reviewing the medical record, the ME discussed several individual Listings and opined that none of Plaintiff's impairments met the criteria required by the Act.[69] The ME also explicitly stated that the obstruction of Plaintiff's right coronary artery should have no impact on Plaintiff's RFC.[70]

Next, it appears that the ALJ had no reason to consider

---

[67]   Effective April 13, 2006, Subsection 2 of Listing 4.04C was revised to read: "2. Resulting in very serious limitations in the ability to independently initiate, sustain, or complete activities of daily living." See 71 FR 2312, 2335. The court will apply the language that controlled at the time of the ALJ's decision.

[68]   See tr. 19.

[69]   Tr. 466-468.

[70]   Tr. 474-475.

17

Listing 4.04C when evaluating Plaintiff's disability status.  To qualify under that Listing, Plaintiff must have provided evidence that a medical consultant "concluded that performance of exercise tolerance testing would present a significant risk" to him.  <u>See</u> 20 C.F.R. Part 404 App. 1 § 4.04C (2005).  This averment by a medical consultant is clearly required by the Listing and is clearly absent from the record.  As the court can find no reference to exercise tolerance testing in the transcript, Plaintiff did not carry the burden necessary to support an any evaluation under Listing 4.04C.

Based on the ME's testimony that Plaintiff's impairments were not Listing level and Plaintiff's inability to satisfy a threshold requirement of Listing 4.04C, the court sees no reason to question the ALJ's determinations at step three of the evaluation process.

### **B. Obesity**

Plaintiff next contends that the ALJ erred by failing to properly assess Plaintiff's obesity as a disabling factor under SSR 02-01p.  Plaintiff argues that, because the ALJ did not discuss his obesity at the later steps of the analysis, the opinion is flawed.  The court disagrees.

Here, the ALJ acknowledged that Plaintiff was obese when he found at step two of the analysis that Plaintiff's obesity constituted a severe impairment.[71]  This finding satisfied the

---

[71]   <u>See</u> tr. 23.

18

portion of SSR 02-01p that required the Commissioner to consider obesity in determining whether a claimant had a medically determinable impairment that was severe.  See SSR 02-01p, 2002 SSR LEXIS 1.  Furthermore, the ME opined that Plaintiff's weight did not affect his evaluation under the Listings, and appears to have considered his weight when testifying that Plaintiff's RFC precluded climbing, heights, balancing, and ladders.[72]

Moreover, Plaintiff reported that he was able to drive, go to church, go fishing, do some grocery shopping, and complete a variety of household chores.[73]  With the exception of answering "about 215" when explicitly asked by the ALJ how much he weighed, Plaintiff did not otherwise mention or reference his alleged obesity during the hearing.[74]

Considering the foregoing, Plaintiff clearly did not carry his burden to produce evidence that his weight resulted in any impairment or limitation attributed to obesity beyond those that were otherwise considered by the ALJ in his analysis of Plaintiff's RFC.  The court finds, therefore, that the ALJ properly took into account Plaintiff's weight in rendering his decision, even if the decision failed to make explicit mention of obesity's direct impact on Plaintiff's RFC.  Plaintiff gave the

---

[72]     Tr. 467, 471.

[73]     Tr. 456, 457-458, 462,

[74]     See tr. 465.  Likewise, Plaintiff did not list "obesity" or otherwise reference limitations directly attributable to his weight on either his Disability Report or his Reconsideration Disability Report.  See tr. 111, 140-142.

ALJ no reason to consider additional, weight-related, functional limitations when making his determination.

### C. Limitations

Plaintiff next argues that the ALJ failed to include all of Plaintiff's limitations when determining his RFC. Specifically, Plaintiff contends that the ALJ did not take into account his complaints of fatigue and shortness of breath, and his difficulty with heights and balance.[75]

The Commissioner is granted the authority to determine which disabilities and limitations are supported by the evidence, and the court should overturn the Commissioner's determinations "only where there is a conspicuous absence of credible choices or no contrary medical evidence." Johnson, 864 F.2d at 343-344 (internal quotation marks omitted); see also Brown 192 F.3d at 496. Furthermore, the ALJ's recognition of limitations must be supported by substantial evidence. See Johnson, 864 F.2d at 343-344.

In this case, the ALJ's findings recognized that Plaintiff suffered from degenerative disc disease, hypertension, heart disease, gout, obesity, and the affects of a repaired aneurism.[76] He determined that Plaintiff could sit for six hours per day and could lift ten pounds frequently and twenty pounds occasionally,

---

[75]   See Plaintiff's Motion for Summary Judgment, Docket Entry No. 24, pp. 14-15.

[76]   Tr. 19.

restrictions that are wholly consistent with evaluations
completed by Plaintiff's orthopedic surgeon on April 11, 2005,
and by his cardiovascular surgeon on September 1, 2005.[77]  This
RFC is also consistent with the assessments made by two state
examining physicians in January and May of 2004, and with the
opinion of the ME testifying in September 2005.[78]

Contrary to Plaintiff's claims, the ALJ also included
restrictions related to Plaintiff's ability to work at heights
and to balance, despite the determination by the state examining
physicians that no postural limitations had been established by
Plaintiff's records.[79]  Finally, the ALJ included a requirement
that Plaintiff be able to rest at his workstation for at least
ten minutes after standing or walking.[80]

These limitations are plainly supported by substantial
evidence in the record, and arguably include recognition even of
those restrictions urged by Plaintiff based on his stated
fatigue, shortness of breath, and problems with heights and
balance.  Therefore, finding the ALJ's determination of
limitations to be credible, the court cannot overturn the
Commissioner's decision.

### D. Credibility Assessment

---

[77]   Tr. 390, 412.

[78]   See tr. 267, 280, 470-471.

[79]   See tr. 24, 268, 281.

[80]   Tr. 24.

Lastly, Plaintiff argues that the ALJ failed to comply with the relevant SSR when evaluating the credibility of his complaints related to symptoms and pain.

"While an ALJ must consider an applicant's subjective complaints of pain, he is permitted to examine objective medical evidence in testing the applicant's credibility. He may find, from the medical evidence, that an applicant's complaints of pain are not to be credited or are exaggerated." Johnson v. Heckler, 767 F.2d 180, 182 (5th Cir. 1985). Additionally, the Fifth Circuit has held that an ALJ was correct in considering a claimant's ability to perform household chores when evaluating the credibility of his complaints. See Vaughan v. Shalala, 58 F.3d 129, 131 (5th Cir. 1995).

After reciting a thorough history of Plaintiff's medical treatment and complaints, the ALJ noted that, "On a daily basis, [Plaintiff] reads, puts dishes in the dishwasher, does laundry once a month, does grocery shopping for one or two items[,] and he drives two to three times a week."[81] The decision also highlighted assessments from Plaintiff's treating physicians and state medical examiners that advised Plaintiff was capable of working.[82] Finally, the court notes that both state medical examiners explicitly opined that Plaintiff's allegations related

---

[81]     Tr. 19-21.

[82]     Tr. 19, 20, 21.

22

to his symptoms were not wholly credible.[83]

This court is simply not at liberty to reweigh the evidence or overrule the ALJ's decisions as to credibility. See Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir. 2001); Carrier v. Sullivan, 944 F.2d 243, 247 (5th Cir. 1991); Villa v. Sullivan, 895 F.2d 1019, 1024 (5th Cir. 1990). Finding that the ALJ's evaluation of Plaintiff's subjective complaints is supported by substantial record evidence, the court must defer to the ALJ's assessment. See Villa, 895 F.2d at 1024. Although it is quite possible that Plaintiff's ability to do some types of work may be limited by his experiencing some pain, the inability to work without some pain will not in and of itself render him disabled. See Chambliss, 269 F.3d at 522; Richardson v. Bowen, 807 F.2d 444, 448 (5th Cir. 1987).

**E. Defendant's Motion for Summary Judgment**

Defendant asserts in her motion that the ALJ's decision should be affirmed because it properly determined Plaintiff was never under a disability. Finding no legal error in the ALJ's decision, the court should not disturb it if substantial record evidence supports the Commissioner's finding that Plaintiff is not disabled.

The court recognizes the seriousness of Plaintiff's medical condition; however, the record must be reviewed with an eye

---

[83]     Tr. 271, 284.

toward determining only whether the ALJ's decision is supported by more than a scintilla of evidence.  <u>See</u> <u>Carey</u>, 230 F.3d at 135.

As the court finds more than a scintilla of evidence in support of the determination, it cannot overturn the decision of the ALJ, who is given the task of weighing the evidence and deciding disputes.  <u>See</u> <u>Chambliss</u>, 269 F.3d at 522; <u>Carrier</u>, 944 F.2d at 247.

The court also agrees with Defendant that the ALJ applied proper legal standards in evaluating the evidence and in making her determination.  Therefore, Defendant's cross motion for summary judgment will be granted.

### IV. Conclusion

For all of the foregoing reasons, the court **DENIES** Plaintiff's motion for summary judgment and **GRANTS** Defendant's cross motion for summary judgment.

SIGNED at Houston, Texas, this 16th day of March, 2007.


Nancy K. Johnson
United States Magistrate Judge

24